**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SUSAN KEITH,<br><br>    Plaintiff,<br><br>v.<br><br>HARBOURVEST PARTNERS LLC,<br>NANCI PALLADINO, SEAN CHAU,<br>and JENI DIGIOVANNI,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   No. 1:25-cv-11384-JEK<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS</u>

**KOBICK, J.**

*Pro se* plaintiff Susan Keith interviewed for, and was rejected from, a job with defendant HarbourVest Partners LLC. She claims that during the interview process, defendant Sean Chau, an employee of HarbourVest, subjected her to discriminatory questioning and a hostile interview environment based on her age and family status. She further alleges that, after rejecting her because of her age, HarbourVest, Chau, and two other defendants coordinated to conceal their illegal discrimination. Keith asserts federal and state law claims of discrimination and aiding and abetting of discrimination. The defendants move to dismiss for failure to state a claim. For the reasons that follow, the defendants' motions will be granted. Keith fails to plausibly allege age discrimination under the Age Discrimination in Employment Act, and the Court will decline to exercise supplemental jurisdiction over her state law claims. The Court will also deny Keith's motion for leave to file a second amended complaint, as her proposed pleading contains no new factual allegations that could cure the deficiencies in her operative pleading.

**BACKGROUND**

The following facts, which are assumed true on a motion to dismiss, are drawn from the amended complaint and documents fairly incorporated by reference. *See Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024).

Plaintiff Susan Keith is a U.S. citizen over forty years old. ECF 5, ¶ 114. In January 2024, she completed the processes to join the "Returners Program" at FDM Group, a global IT consulting firm specializing in recruiting, training, and placing technology professionals in open roles with corporate clients. *Id.* ¶¶ 32, 106-07. FDM's Returners Program is designed to help experienced professionals with career gaps reenter the workforce by providing them with structured training, mentorship, and a two-year consultant role at a corporation. *Id.* ¶¶ 109, 111. Program participants who are placed with corporations make a two-year commitment and are charged a "training penalty fee" if they are unable to fulfill the commitment. *Id.* ¶ 109.

Keith was slated to join the "Mainframe Returner Program," which targeted former programmers in response to critical industry needs. *Id.* ¶¶ 107, 110. Her cohort, however, was "placed on hold." *Id.* ¶¶ 107, 119. Nonetheless, FDM obtained permission from Keith and other participants of the stalled program to share their profiles with current clients that might benefit from their skills. *Id.* ¶ 32. One of those clients was defendant HarbourVest Partners LLC, a private equity investment firm. *Id.* ¶¶ 105-06. As part of this profile-sharing "arrangement" with FDM, Mainframe Returners like Keith expected to "receive critical training support and upskilling as needed." *Id.* ¶ 33.

On April 4, 2024, Jake Kurtz, FDM's Account Manager for its relationship with HarbourVest, called Keith to inform her that he had submitted her profile to HarbourVest for a junior role as a "Business Analyst." *Id.* ¶¶ 108, 119, 129. HarbourVest intended to replace its

2

existing FDM-placed Business Analyst with someone "more comfortable interacting with challenging clients," and they wanted to interview her. *Id.* ¶ 129. Keith's profile, which HarbourVest received, was "appropriately focused on her technical industry experience," and it clearly listed the gap in her career. *Id.* ¶¶ 6, 189.[1] Kurtz assured Keith she would have to complete only one interview. *Id.* ¶¶ 44, 64, 129, 131.

On April 10, 2024, Keith interviewed with Zachary Bloom, the hiring manager at HarbourVest, for the Business Analyst position. *Id.* ¶¶ 120, 130, 150. During the interview, Bloom "expressed enthusiasm" on behalf of HarbourVest about Keith's qualifications and stakeholder engagement skills. *Id.* ¶¶ 130, 151; *see id.* ¶¶ 194-95. When Keith's career gap came up, Bloom stated that it posed no concerns because "nothing has changed in twenty years" regarding the role's core requirements. *Id.* ¶¶ 153, 211, 234. After Keith indicated that she had been in a similar Business Analyst role decades ago, Bloom responded "you know they can't discriminate." *Id.* ¶ 152. When Keith said she was willing to "be upskilled" for the role, Bloom assured her that he "was not concerned with any skills that needed refreshing" and explained that HarbourVest would prefer to provide its own approved training, should it become necessary. *Id.* ¶¶ 186, 194, 196, 201. Bloom then told Keith she was "overqualified" for "this entry-level role" and "expressed elation about onboarding" her. *Id.* ¶ 185. Bloom concluded the interview by "initiat[ing] onboarding logistics" and "mention[ing] that he wanted [Keith] to meet someone from the team that was also in the same role." *Id.* ¶¶ 120, 160.

---

[1] The amended complaint contains extensive allegations about Keith's additional professional and charitable experiences that were not featured in the profile provided to HarbourVest. *See, e.g.*, ECF 5, ¶¶ 7-21, 26, 30. Keith does not allege that HarbourVest had any knowledge of these additional qualifications.

Later on April 10, Kurtz contacted Keith "with unusual urgency through multiple calls." *Id.* ¶ 131. When they connected, Kurtz informed Keith that she would need to complete another interview with HarbourVest. *Id.* The next day, April 11, Keith met in person with defendant Sean Chau, a "junior" employee at HarbourVest and a 2020 graduate of Northeastern University. *Id.* ¶¶ 132, 163, 218. At the meeting, Chau positioned himself as having significant decision-making authority in part by asserting that he "'no longer reports to [Bloom].'" *Id.* ¶ 163. Throughout the meeting, Chau engaged in constant, excessive typing to the point that he apologized for his lack of eye contact with Keith. *Id.* ¶¶ 123, 172.

Chau focused his questions on Keith's family status, "parental responsibilities," and "personal circumstances" rather than her job qualifications. *Id.* ¶¶ 132, 168-69, 192, 210. He asked no questions about her technical capabilities. *Id.* ¶¶ 89, 192, 323. In Keith's view, he "trivializ[ed] her continuous learning by asking about her 'favorite class' on MIT OpenCourseWare" and "questioning [her] PMI certification." *Id.* ¶ 171. He otherwise diverted the meeting into "personal matters and family responsibilities in a way," Keith asserts, that did "not appl[y] to younger candidates." *Id.* ¶¶ 166, 211. Chau was particularly focused on the fact that Keith had a child in college. *Id.* ¶ 168. He "scrutiniz[ed] her ability to balance work and family" by "repeatedly stating that travel to visit her child at university would 'be a problem' and questioning the impact of [her] child's future graduate school plans," even though the role was advertised as hybrid. *Id.* ¶¶ 169-170, 286. He also "contrast[ed] his own youth and local ties with [Keith's] established family obligations." *Id.* ¶ 248. In so doing, he attempted "to discourage [her] from the role by asserting that her family status commitment would pose a problem." *Id.* ¶ 121. At the conclusion of the interview, Chau invited Keith to follow up with questions. *Id.* ¶¶ 174, 215. On April 12, Keith sent

Chau a "comprehensive and professional follow-up email," to which Chau never responded. *Id.* ¶¶ 175, 177.

On April 17, 2024, Kurtz sent Keith a text message indicating that HarbourVest would not be hiring her. It stated:

> [Bloom] was [out of the office] but got back to me today and passed on your profile. His team fears the gap in the resume and being able to get up to speed quickly. I will definitely keep you in mind for future roles with HarbourVest.

*Id.* ¶ 179. After receiving the text message, Keith reported Chau's "discriminatory questioning" to Kurtz. *Id.* ¶ 134. Following this report, Keith met with defendant Jeni DiGiovanni, FDM's "Human Resource Peoples Operation Team Lead." *Id.* At their meeting, Keith requested that Chau "be educated on proper interview practices [because] his questioning appeared to be discriminatory," and she expressed concern that "discriminatory treatment" would be "typical" in HarbourVest's "subculture." *Id.* DiGiovanni "confirmed this was indicative of how [Keith] would be treated at the company" and asked if she "wanted to be removed from FDM Group's consideration list." *Id.* ¶¶ 134, 332-33.

On April 30, Keith followed up with DiGiovanni to ask what action had been taken to "address the discriminatory conduct." *Id.* ¶ 135. DiGiovanni responded that "no further actions would be taken." *Id.* Shortly after, Keith contacted Bloom and reached out to legal counsel for "advice regarding the discriminatory treatment and FDM's inadequate response." *Id.* ¶ 136. On May 2, Tricia Harvey, "Head of People US" at FDM, told Keith that "they would investigate the matter" in more detail, but she ultimately became unavailable and unresponsive to further inquiries from Keith. *Id.* ¶ 137. At some point, Keith learned that by the time she was rejected on April 17, HarbourVest had already selected another candidate for the role. *Id.* ¶¶ 184, 206. This candidate,

Keith alleges, could not have been an FDM placement, as Keith was "the only available FDM candidate left, initially out of two," by this stage. *Id.* ¶ 184(b).

On May 8 and May 10, defendant Nanci Palladino, HarbourVest's Human Resources Manager, reached out to Keith regarding her discrimination complaint and to "prob[e] whether [Kurtz] had discussed training or the interview" with Keith. *Id.* ¶¶ 75-77, 193, 319-20. During their May 10 call, Palladino explained that, though Chau thought Keith was a "culture fit" for HarbourVest, there was "concern" about Keith's skill set, particularly those Business Analyst "skills needed for information gathering and translating requirements." *Id.* ¶¶ 78, 86-88, 139. Palladino further explained that Keith's "'answers' to [Chau's] questions weren't what he was looking for," but she "could not provide any specificity about what answers were allegedly deficient." *Id.* ¶¶ 87-88. When Keith inquired about the age of "the replacement candidate," Palladino "refused to disclose even the age range." *Id.* ¶¶ 184, 325.

On May 21, 2024, Keith filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against HarbourVest. *Id.* ¶ 140. Keith received a Notice of Right to Sue from the EEOC on February 19, 2025. *Id.* ¶ 148; *see* ECF 1-4. On May 15, 2025, Keith initiated this action, asserting federal and state law claims against HarbourVest, Chau, Palladino, and DiGiovanni. ECF 1. She filed an amended complaint six days later. ECF 5. Counts I, III, and IV of the amended complaint, brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, allege age-based claims of disparate impact, disparate treatment, and a "hostile interview environment." ECF 5, ¶¶ 221-42, 260-95. Count II, titled "Family Status Discrimination as Evidence of Age Discrimination," asserts that Chau's questions about Keith's college-age child are evidence of age discrimination. *Id.* ¶¶ 243-59. Counts V and

VI, brought under M.G.L. c. 151B, assert claims of age and family status discrimination, as well as aiding and abetting discrimination. *Id.* ¶¶ 296-336.

HarbourVest, Chau, and Palladino filed a joint motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF 22. DiGiovanni filed a separate motion to dismiss under Rule 12(b)(6). ECF 38. The Court held a hearing after receiving Keith's opposition briefs and the defendants' reply briefs. At the hearing, Keith orally requested to strike Counts II, III, and, to the extent it asserts a claim of "family status discrimination," Count V of the amended complaint. ECF 53; ECF 56, ¶ 5.[2] That request is granted and those Counts will be dismissed without prejudice. Remaining for consideration are the motions to dismiss Keith's disparate treatment and hostile interview environment claims under the ADEA (Counts I and IV), as well as her Chapter 151B claims for age discrimination and aiding and abetting (Counts V and VI).

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[2] Count V is titled "Family Status Discrimination Under Massachusetts Law M.G.L. c. 151B." ECF 5, at 53. Chapter 151B does not protect against discrimination on the basis of family status. *See* M.G.L. c. 151B, §§ 4(1)-(1B) (describing protected classes). At the hearing, Keith asked to strike Count V insofar as it asserts a theory of "family status discrimination." Construing Keith's complaint liberally, the Court understands Count V to also assert a claim of age discrimination under M.G.L. 151B, § 4(1B). The Court will therefore strike Count V only insofar as it asserts a claim of family status discrimination.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part of or incorporated into the complaint." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted). Where, as here, the plaintiff is proceeding *pro se*, the Court construes her complaint liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

### I.   ADEA Claims.

#### A.   Disparate Treatment.

The ADEA makes it unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on a disparate treatment theory of age discrimination, a plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). Because "ADEA plaintiffs rarely possess 'smoking gun' evidence to prove their employers' discriminatory motivations," they may "prove their cases by using the three stage burden-shifting framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 446-47 (1st Cir. 2009). This framework applies where, as here, the plaintiff does not allege direct evidence that the defendant refused to hire her because of her age.[3]

---

[3] Rather, Keith contends that after Bloom approved and began onboarding her for the Business Analyst role at HarbourVest, Chau "discriminatorily interfered based on age-related observations," and caused a "reversal" of Bloom's decision to hire her. ECF 29, at 1. Then, after rejecting her because of her age, she alleges, the defendants made a "coordinated effort . . . to conceal the true

Under the first stage of the *McDonnell Douglas* framework, to establish a prima facie case of age discrimination in a failure to hire situation, Keith must plausibly allege that: (1) she was at least forty years old; (2) she was qualified for the job; (3) she was rejected for the position; and (4) there is a causal connection between her age and the employer's decision not to hire her. *See Walsh v. HNTB Corp.*, No. 24-1499, 2026 WL 710036, at *5 (1st Cir. Mar. 13, 2026); *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir. 1994), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000); *see also* 29 U.S.C. § 631(a) (ADEA protects those who are at least forty years of age).[4] At the pleading stage, the prima facie elements "are part of the background against which a plausibility determination should be made." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013). All Keith must do is "plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial." *Id.*

There is no dispute that Keith has sufficiently alleged the first three elements of her prima facie case: she was over forty when she interviewed at HarbourVest, she was "overqualified" for the Business Analyst role, and she was not hired for that position. ECF 5, ¶¶ 114, 179, 185. The nub of the dispute is whether Keith has alleged facts to infer a plausible causal connection between her age and HarbourVest's refusal to hire her. And despite the length of her amended complaint,

---

decision-making timeline and create post-hoc justifications for the rejection, specifically targeting [Keith] in a manner not applied to younger candidates." ECF 5, ¶ 281.

[4] In a failure to hire situation, the causal connection may be supported by a showing that HarbourVest either continued to seek applicants with Keith's qualifications or filled the position with someone of comparable or inferior qualifications. *See Woods*, 30 F.3d at 259; *Stark v. Bunch*, No. 19-cv-12109-ADB, 2020 WL 4369700, at *4-5 (D. Mass. July 30, 2020) (discussing uncertainty in the case law and determining that either a showing that the employer hired someone else or continued to seek candidates could suffice). Nevertheless, the burden remains on Keith to allege a plausible causal connection between her age and HarbourVest's choice not to hire her. Alleging that another person received the job, without more, does not allow the Court to infer a causal relationship between Keith's age and her rejection from the job.

9

Keith has not crossed the plausibility threshold on that element. Keith does not allege that any of the defendants so much as referenced her age during the interview or any time after the interview. *See Dick v. Wood Hole Oceanographic Inst.*, No. 21-cv-10007-DJC, 2021 WL 3146049, at *4 (D. Mass. July 26, 2021) (noting that isolated comments directly disparaging plaintiff's age would still be "inadequate to allege an age discrimination claim"). Nor does she allege that HarbourVest hired a person with comparable or inferior qualifications for the Business Analyst position. Instead, Keith argues that Chau's questions about her family status, including comments about travel to visit her college-age child, served as a "proxy" for age discrimination. ECF 5, ¶ 249. As Keith sees it, by "targeting" her family status, Chau and the other defendants "creat[ed] artificial conflicts between family obligations and job requirements" as a "pretext for age-based rejection." *Id.* ¶¶ 245, 254, 257.

This argument is unavailing. The ADEA and Title VII do not protect against discrimination on the basis of family status. *See, e.g.*, *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146-48 (10th Cir. 2008). And even assuming as true Keith's allegations that HarbourVest refused to hire her because of its awareness of her college-age child, this does not, without more, lead to a plausible inference that the defendants discriminated against Keith because of her age. *Cf. Kentucky Ret. Sys. v. E.E.O.C.*, 554 U.S. 135, 143-44 (2008) (rejecting the argument that pension status is necessarily a proxy for age in part because "one can easily conceive of decisions that are actually made 'because of' pension status and not age, even where pension status is itself based on age"). People under forty may, of course, have college-age children and outside family commitments. Nor do the other facts Keith alleges about the interview—including Chau's lack of eye contact, excessive typing, and recent graduation from college—have any plausible nexus to discrimination against her on the basis of age. Simply put, Keith has alleged no facts that could

give rise to the plausible inference that her lack of success in the job application was linked to her age.

All that remains, then, are Keith's allegations that the defendants knew she was over forty and chose not to hire her because of it. Even assuming the defendants knew Keith was over forty, to survive a motion to dismiss, it is not enough for Keith to merely allege that she "is a member of a protected class and was subject to an adverse employment action." *Higgins v. State St. Corp.*, 323 F. Supp. 3d 203, 207 (D. Mass. 2018). Nor are Keith's entirely conclusory allegations that the defendants "appl[ied] different standards to [her] than younger candidates" enough to support an inference of causation. ECF 5, ¶ 211; *see Higgins*, 323 F. Supp. 3d at 206-207 (granting motion to dismiss ADEA claim and noting that "although plaintiff provides his speculative conclusion that [the defendant] based its decisions on his age, he alleges no plausible facts from which a fact-finder could infer that age discrimination occurred"). Because Keith has not alleged a plausible causal connection between her age and her rejection from the Business Analyst position at HarbourVest, her disparate treatment claim must be dismissed.

B.    Hostile Work Environment.

Keith also claims that the defendants "created a discriminatory interview environment" in violation of the ADEA. *See* ECF 5, ¶¶ 272-95. Under the ADEA, a plaintiff claiming to have been subjected to a hostile work environment "must provide sufficient evidence from which a reasonable jury could conclude that the offensive conduct is severe and pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." *Rivera-Rodriguez v. Frito Lay Snacks Caribbean, a Div. of Pepsico Puerto Rico, Inc.*, 265 F.3d 15, 24 (1st Cir. 2001) (quotation marks omitted). "Such a claim does not ordinarily turn

on single acts but on an aggregation of hostile acts extending over a period of time." *Havercombe v. Dep't of Educ. of the Commonwealth*, 250 F.3d 1, 6 (1st Cir. 2001).

The defendants argue that, because Keith was never hired, the hostile work environment theory cannot apply. Alternatively, they contend, Keith has failed to allege conduct that meets the "severe or pervasive" standard applicable to a hostile work environment claim. Assuming, without deciding, that the hostile work environment theory applies to this case, the Court agrees with the defendants that Keith has nonetheless failed to allege sufficient facts to plausibly state such a claim. In determining whether a hostile work environment is plausibly pled, it is the Court's job to "distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005). The Court must look to "all the attendant circumstances including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." *Pomales v. Celulares Telefónica, Inc.*, 447 F.3d 79, 83 (1st Cir. 2006). The conduct Keith has alleged—a single interview in which the interviewer questioned Keith about her family status and typed excessively—may have been unpleasant, but it is not the kind of severe or pervasive conduct that gives rise to a plausible hostile work environment claim. Keith's hostile work environment claim under the ADEA will therefore be dismissed.

## II.    Chapter 151B Claims.

Keith's remaining claims under Chapter 151B arise under state law. When, as here, subject matter jurisdiction is based on federal question jurisdiction under 28 U.S.C. § 1331, district courts may exercise supplemental jurisdiction over state law claims that are "so related to claims in the [federal] action . . . that they form part of the same case or controversy under Article III of the

12

United States Constitution." 28 U.S.C. § 1367(a).[5] But when the Court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *see Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 36 (1st Cir. 2020) ("[I]t is settled law that district courts may decline to exercise supplemental jurisdiction over pendent state law claims when the anchor federal claims for those state law claims are dismissed."). The Court must also consider "interests of fairness, judicial economy, convenience, and comity." *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998).

These factors counsel against the exercise of supplemental jurisdiction over Keith's state law claims. "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Rivera-Díaz v. Humana Ins. of Puerto Rico, Inc.*, 748 F.3d 387, 392 (1st Cir. 2014) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Since the Court has determined, at this "early stage in the litigation," that the federal ADEA claims must be dismissed, the "balance of competing factors . . . weigh[s] strongly in favor of declining jurisdiction." *Camelio*, 137 F.3d at 672; *see Swartz v. Sylvester*, 53 F.4th 693, 703 (1st Cir. 2022) (affirming district court's decision not to exercise supplemental jurisdiction over state law claim after entering summary judgment on federal law claim); *Borrás-Borrero*, 958 F.3d at 36-37 (same after affirming dismissal of federal law claims). Accordingly, Keith's claims under Chapter 151B will be dismissed without prejudice.

---

[5] Diversity jurisdiction under 28 U.S.C. § 1332(a) does not exist in this case because Keith and at least one of the defendants are residents of Massachusetts. ECF 5, ¶ 113 & at 67.

III.    **Motion for Leave to File a Second Amended Complaint.**

At the hearing on the motions to dismiss, Keith orally requested leave to amend her complaint for a second time. ECF 53. Then, two weeks after the hearing, she filed a motion seeking leave to file a second amended complaint and submitted a copy of her proposed pleading. ECF 56, 57. Keith represents that her proposed second amended complaint "add[s] no new factual allegations or legal theories," and that her "proposed counts arise from the same operative facts." ECF 56, ¶¶ 9, 14. She contends that she seeks to "streamlin[e]" her legal theories, restructuring her counts to assert claims of age discrimination and hostile work environment under the ADEA (proposed Counts I and III), and age discrimination, hostile work environment, and aiding and abetting discrimination under Chapter 151B, § 4 (proposed Counts II, IV, and V). ECF 56, ¶¶ 7, 9; ECF 57, ¶¶ 148-243. The defendants oppose her motion.

When, as here, a plaintiff has already exercised her right to amend the complaint as a matter of course, she may amend her pleadings "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although the Court "should freely give leave when justice so requires," *id.*, the Court "enjoys significant latitude in deciding whether to grant leave to amend," *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008). Requests "characterized by undue delay, bad faith, futility, [or] the absence of due diligence" need not be granted. *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013) (quotation marks omitted). The Court agrees with the defendants that amendment would be futile in this case. Keith admits that her proposed pleading adds no new meaningful factual allegations. The Court has reviewed Keith's proposed second amended complaint and concurs; there are no new facts asserted that could move Keith's ADEA claims from the realm of speculative to the realm of plausible. Accordingly, Keith's motion for leave to file a second amended complaint will be denied. *See*

14

*Snyder v. Collura*, 812 F.3d 46, 51 (1st Cir. 2016) (affirming denial of plaintiff's motion to amend his complaint because the proposed complaint "did not contain new facts"); *Lu v. Niles*, No. 16-cv-12220-FDS, 2017 WL 3027251, at *5 (D. Mass. July 17, 2017) (denying leave to amend where the "proposed amended complaint [wa]s substantially similar to the original complaint").

**CONCLUSIONS AND ORDERS**

For the foregoing reasons, the defendants' motions to dismiss, ECF 22 and ECF 38, are GRANTED. Keith's federal ADEA claims, Counts I and IV, are DISMISSED with prejudice. Keith's Chapter 151B claims, Counts V and VI, are DISMISSED without prejudice. The claims Keith voluntarily dismissed, Counts II and III, are also DISMISSED without prejudice. Keith's motion for leave to file a second amended complaint, ECF 56, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: March 30, 2026